**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| MAI TODOROV, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LENDINGTREE, LLC D/B/A QUOTE WIZARD,<br><br>Defendant. | **Case No. 3:26-CV-00580** |

**Defendant LendingTree, LLC d/b/a Quote Wizard's Brief in Support of its Motion to Compel Arbitration**

Defendant LendingTree, LLC d/b/a Quote Wizard ("QuoteWizard") moves to compel Plaintiff Mai Todorov ("Plaintiff") to arbitrate her claims and stay this action because QuoteWizard's Terms of Use Agreement ("Terms of Use") contains a valid, written arbitration clause requiring Plaintiff's claim be submitted to binding, individual arbitration. Through clear prompts on the subject website confirming that clicking through to receive services would bind her to the Terms of Use, Plaintiff agreed to those Terms of Use. And as a result, Plaintiff agreed to the arbitration provision in those Terms of Use, and the provision contains a clear and unmistakable delegation clause providing that an arbitrator, and not the Court, will decide all threshold arbitrability questions.

Despite Plaintiff's agreement to arbitrate all claims related to her use of the subject website and any marketing communications received as a result of her visit

to the website—and despite having additionally waived the right to a jury trial—Plaintiff sues QuoteWizard, asserting violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), and its implementing regulations, *see* 47 C.F.R. § 64.1200 and 47 C.F.R. § 64.1601.

The arbitration provision set forth in the Terms of Use is fully enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 3–16 (the "FAA"). In fact, this Court has already found QuoteWizard's Arbitration Clause enforceable in *Granados v. LendingTree, LLC*, 3:22-cv-504-MOC, 2023 WL 2672830 (W.D.N.C. Mar. 28, 2023) and *Toledo v. QuoteWizard.com, LLC*, 3:25-cv-00949-MEO-DCK (W.D.N.C. July 31, 2026), cases in which this Court approved the arbitration provision at issue here. To the extent Plaintiff challenges her arbitration obligations, the arbitration provision's delegation clause requires that any defenses to the provision, including this dispute's arbitrability, must first be decided by the arbitrator. In any event, this dispute falls within the scope of the arbitration provision.

For these reasons, QuoteWizard moves to compel arbitration of Plaintiff's claims and to stay this action pending the completion of such arbitration. *See* 9 U.S.C. § 3; Fed. R. Civ. P. 12(b)(1), (3), and (6); *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024) (requiring stay of proceedings under the FAA upon request of a party).

## Factual Background

### A. Plaintiff uses QuoteWizard's insurance matching website

On April 4, 2026, Plaintiff visited https://compare-cheap-insurance-quotes.com/form/ (the "Website"). The replay of Plaintiff's visit to the Website reveals

that Plaintiff answered a brief questionnaire and entered her name, address, email address, zip code, gender, marital status, credit score, education status, homeowner status, birthdate, and military status into the Website. Plaintiff also input information concerning two vehicles, including the year, make, model, and trim of both vehicles. After inputting this information on the Website, Plaintiff clicked the "Get My Auto Quotes Only" button. (*See* **Exhibit 1**, Thompson Decl. at ¶ 13; *id.*, Ex. A.) Immediately under the button is the following disclaimer, which appears on the Website:

**Get My Auto & Home Quotes**

**Get My Auto Quotes Only**

By clicking "Get My Auto & Home Quotes" or "Get My Auto Quotes Only", I provide my express written consent to receive calls and text messages, including for marketing purposes, from QuoteWizard, companies in QuoteWizard's network or their affiliates , and any party calling or texting on their behalf at the phone number provided by me, including calls and texts made using automated means such as automatic telephone dialing systems, autodialers, selection systems, robocalls, and prerecorded or artificial voice recordings, even if my number is listed on any company-specific, state, or federal Do-Not-Call list. I understand such calls and texts may transmit insurance quotes or seek additional insurance-related information from me. Message and data rates may apply. I understand that consent is not a condition of any purchase and that I may revoke my consent at any time.

By clicking "Get My Auto & Home Quotes" or "Get My Auto Quotes Only", I am also acknowledging that I have read, understand, and agree to this website's Privacy Policy and Terms of Use , and I am directing this website to share my information with providers in its network for the purpose of providing me with information about their financial services and products.

As part of the quoting process, providers will be confirming information based on claims reports and your credit-based insurance score. This will help provide you with the best quote possible. This information may be used to provide you with a quote for another insurance policy, if requested.

(*See id.*, Ex. B.)

By clicking the "Get My Auto Quotes Only" button, Plaintiff provided express written consent to QuoteWizard to contact her, "including calls and texts made using automated means such as automatic telephone dialing systems, autodialers, selection systems, robocalls, and prerecorded or artificial voice recordings." (*See* **Exhibit 1**, Thompson Decl. at ¶ 7, Ex. B.)

In addition to consenting to text messages and calls, Plaintiff also agreed to mandatory binding arbitration and a class action waiver. In the disclosure above, there is a highlighted hyperlink to the Website's "Terms of Use." (*See* **Exhibit 1**, Thompson Decl. at ¶¶ 7-9, Ex. C, Terms of Use.) Under the Terms of Use, there is a provision titled "Dispute Resolution (Including Arbitration Agreement; Class Action Waiver; Jury Trial Waiver)." (*Id.* at ¶ 11, Ex. C pgs. 11-18.) The Dispute Resolution provision contains the following mandatory arbitration provision:

> **Arbitration Agreement**: If unable to work out a solution amicably, both you and LendingTree agree to resolve through final and binding individual arbitration, except as otherwise provided in this Dispute Resolution section, any dispute, claim, or controversy (each, a "Dispute") arising at any time (including before the effective date of this Agreement), in any way arising out of or relating to: (i) this Agreement and prior versions of this Agreement, including the formation, existence, breach, termination, enforcement, interpretation, validity, scope, or enforceability thereof; (ii) the Websites, Widgets, and Services, including access to the Websites, Widgets, and Services, use of the Websites, Widgets, and Services, receipt of any advertising or marketing communications, and/or any content contained on the Websites or Widgets; (iii) any other aspect of your relationship or transactions with LendingTree as a consumer, except that, as to Providers, this part (iii) is limited to your interactions as a consumer with Providers arising out of your use of the Websites, Widgets, and Services, including but not limited to any text message, telephone call, or other communication you receive from or on behalf of any Provider. You agree that any dispute regarding the enforceability, applicability, or interpretation of any provision of this Agreement, including the provisions regarding dispute resolution and arbitration, is a Dispute subject to the arbitration provisions herein and shall be resolved by an arbitrator.

(*Id.* at ¶ 11, Ex. C at pg. 12)[1]

---

1 QuoteWizard.com, LLC is a wholly owned subsidiary of LendingTree.

In accordance with the Dispute Resolution provision, "the arbitration shall be administered by JAMS under its applicable rules." (*See* **Exhibit 1**, Thompson Decl. at ¶ 11, Ex. C at 15.) The Dispute Resolution provision also provides that Plaintiff agreed to waive her right to a jury and

> EXPRESSLY WAIVE[D] THE RIGHT TO HAVE ANY DISPUTE, CLAIM, OR CONTROVERSY BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED AS A CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE ACTION OR PROCEEDING, OR TO PARTICIPATE IN ANY SUCH ACTION OR PROCEEDING. AN ARBITRATOR SHALL NOT HAVE ANY AUTHORITY TO HEAR, ARBITRATE, OR ADMINISTER ANY CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE ACTION.

(*Id.* at ¶ 11, Ex. C at pg. 17 (emphasis in original)).

Because the Terms of Use were hyperlinked on the webpage into which Plaintiff input her personal information on the Website to solicit insurance quotes, and because Plaintiff clicked on the "Get My Auto Quotes Only" button, they constitute the operative agreement applicable to Plaintiff's claim in the instant action.

### B. Plaintiff's Complaint and Allegations

Despite having agreed to arbitrate all claims related to her use of the Website, and "any text message, telephone call, or other communication … from or on behalf of any provider," Plaintiff sued QuoteWizard alleging violations of the TCPA. Specifically, Plaintiff alleges that on April 4, 2026, April 6, 2026, April 7, 2026, April 8, 2026, and April 10, 2026, she received "unwanted telemarketing text messages" from QuoteWizard for insurance purposes. (Compl., at ¶¶ 13-18.) Because all

allegations in this matter are indisputably based upon Plaintiff's use of QuoteWizard's Website and communications received from QuoteWizard, they fall within the express scope of the Terms of Use and thus are covered by and subject to its arbitration provision. (*See* **Exhibit 1**, Thompson Decl. at ¶ 10, Ex. C at 10-16.) QuoteWizard is therefore left with no alternative but to seek a court order compelling Plaintiff's compliance with the arbitration provision.

## Legal Standard

The FAA governs QuoteWizard's arbitration agreement because the underlying contract involves a transaction in interstate commerce. *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995). Courts regularly find that the FAA applies where, as here, an agreement involves transactions and communications on the internet. *See*, *e.g.*, *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146 (4th Cir. 2025); *Granados*, 2023 WL 2672830 (W.D.N.C., 2023); *Duval v. Costco Wholesale Corp.*, No. 22-cv-2338, 2023 WL 3852694, at *2 (N.D. Cal. June 5, 2023) (collecting cases).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration agreements" and the fundamental principle that arbitration is a matter of contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). The Supreme Court has stressed that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their

terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (emphasis omitted) (*quoting Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)). The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement. 9 U.S.C. § 4.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Mangum v. Ross Dress for Less, Inc.*, 777 F.Supp.3d 519, 525 (E.D.N.C. 2025) ("A court must resolve any doubts in favor of arbitration and compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). In short, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citation omitted) (emphasis in original).

"The standard for deciding a motion to compel arbitration brought under the FAA, 9 U.S.C. § 4, is similar to the standard applicable to a motion for summary judgment." *Ayers v. Markiewicz*, 733 F.Supp.3d 435, 441 (E.D.N.C., 2024); *Chorley Enters., Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (requiring opposing party to "show sufficient facts in support. Not just any factual

dispute will do.”). When deciding a motion to compel arbitration, much like the standard for summary judgment, a court “may consider materials outside of the pleadings, including all relevant, admissible evidence submitted by the parties.” *Eubank v. Camping World RV Sales, LLC*, 764 F.Supp.3d 321, 326 (E.D.Va. 2025) (*quoting Chowdhury v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2022 WL 1105077, at * 1 (E.D. Va. Apr. 13, 2022)).

To compel arbitration under the FAA, the moving party must show “(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.” *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (*quoting Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). “When an arbitration agreement contains provisions that encompass the relevant claims, the burden shifts to the party opposing arbitration to ‘make an unequivocal denial that an arbitration agreement exists and to ‘show sufficient facts in support.” *See Eubank*, 764 F.Supp.3d at 326 (*quoting Chorley Enters.*, 807 F.3d at 564). Where the right to a class proceeding has been waived as part of an agreement to arbitrate, the FAA requires enforcement of that class waiver. *See Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 733 (4th Cir. 2025) (finding that class action waivers in arbitration agreements are enforceable under the FAA).

## Argument

### I. The Parties' arbitration agreement is governed by the FAA.

The FAA's reach is "broad." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012). No burden rests upon "the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction," and a court need not identify any specific effect upon interstate commerce, so long as in the aggregate the economic activity in question would represent a general practice subject to federal control. *Id.* at 697–98 (internal quotation marks and citations omitted).

Here, Plaintiff and QuoteWizard are from different states. (Compl. ¶¶ 8, 10.) QuoteWizard is based in North Carolina, and according to Plaintiff's Complaint, Plaintiff resides in Cook County, Illinois. *Id.* Moreover, according to a video replay of Plaintiff's visit to the Website, Plaintiff provided a Chicago, Illinois address and her IP address is from Chicago, Illinois.[2] (*See* **Exhibit 1**, Thompson Decl. at ¶ 13; Ex. A.) That alone implicates interstate commerce. *See Allied-Bruce Terminix Cos.*, 513 U.S. at 282) (explaining that "interstate commerce" is met when parties are from different jurisdictions). On top of that, QuoteWizard's alleged text messages to Plaintiff involved interstate commerce given that the claimed messages at issue were across state lines. Separately, Plaintiff's submission of her information on the Website and use of the Website were also sufficient to satisfy the interstate commerce requirement. *See Jones-Robinson v. Costco Wholesale Corp.*, 744 F.Supp.3d 421, 427

---

[2] Plaintiff's cellphone area code—(773)—is also associated with the greater Chicago area.

(D. Md. 2024) (finding that FAA applied in a slip-and-fall case, where the plaintiff's use of Instacart application constituted a transaction involving interstate commerce).

Given that the Parties are from different states, that the alleged messages were across state lines, and that Plaintiff submitted her information on the Website, the arbitration agreement is governed by the FAA.

### II. A valid arbitration agreement exists under North Carolina law between Plaintiff and QuoteWizard.

When the FAA governs, the Court must determine whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. *Meadows*, 132 F.4th at 733. Whether the parties formed an agreement to arbitrate is "a matter of contract." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). To make this determination, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

As for which state's laws apply to the instant case, QuoteWizard's principal place of business in North Carolina. (Compl. ¶ 10.) Moreover, the Terms of Use specifically state that they are governed by the laws of the State of North Carolina without regard to any conflict of laws provisions. (*See* **Exhibit 1**, Thompson Decl. at ¶ 10; Ex. C at 17.) A valid contract under North Carolina law requires assent, mutuality of obligation, and definite terms. *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013). Here, all three elements are satisfied, which should end the Court's inquiry in favor of all other issues being

addressed by the arbitrator. The Terms of Use confirm the obligations are mutual, and express definite terms, especially on the subject of arbitration.

With respect to Plaintiff's assent, her act of clicking the prompts secured that assistance. For online contracts, "the traditional notice inquiry focuses on the design and content of the relevant interface and asks whether it would put a reasonably prudent user on notice of a contract on offer and its terms." *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 206 (4th Cir. 2025) (*quoting Dhruva*, 131 F.4th. at 152). Actual notice can be shown through the use of "clickwrap" agreements, whereby a user is presented with terms and is required to affirmatively interact with them, such as by "check[ing] a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (*citing Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–1176 (9th Cir. 2014) (discussing "clickwrap" agreements)). By contrast, a so-called "browsewrap" agreement is one in which a user is not required "to manifest assent to the terms and conditions expressly" but rather "gives his assent simply by using the website." *Nguyen*, 763 F.3d at 1176 (internal quotation marks and citation omitted). A third variant—a middle ground of sorts—"sign-in wrap" agreements, which "do include a textual notice indicating the user will be bound by the terms, but . . . do not require the consumer to review those terms or to expressly manifest their assent to those terms by checking a box or clicking an 'I agree' button." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471 (2021). Rather, users must "click[] *some other* button that they would otherwise need to click to continue with their transaction or their use of the

website—most frequently, a button that allows the consumer to 'sign in' or 'sign up' for an account." *Id.* (emphasis in original); *see also id.* at 463–64 (distinguishing between "click-wrap," "browse-wrap," and "sign-in wrap" agreements); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–76 (2d Cir. 2017) (same); *Toth v. Everly Well, Inc.*, 118 F.4th 403, 411 (1st Cir. 2024) (same). Indeed, this Court has already found the method by which QuoteWizard displays its Terms of Use on the Website and secures its customers' consent to them to comply with North Carolina law. *See Granados*, 2023 WL 1481545 (finding sign-in wrap arbitration agreement enforceable and compelling arbitration); *see also Toledo*, 3:25-cv-00949-MEO-DCK (W.D.N.C. July 31, 2026) (same).

In *Granados*, the plaintiff brought various causes of action against QuoteWizard's parent company, LendingTree, LLC, after visiting LendingTree's website. The Court found that the website's arbitration clause and its provision delegating questions of arbitrability to the arbitrator were enforceable. Specifically, this Court found that by clicking the "Create Account" button, the plaintiff agreed to abide by the terms of use, which contained the arbitration clauses. This Court further found that "a reasonable consumer creating an account . . . would have been aware of the Terms of Use" given that the LendingTree website stated that the consumer was "agreeing to abide by the Terms of Use" by clicking the Create Account tab" and it required consumers to assent to the hyperlinked Terms of Use before they submitted a consumer loan search. *Id.*

In *Toledo*, this Court was presented with the identical issue presented in *Granados*. It wrote in *dicta*, "[t]he [Court] is particularly persuaded by *Granados v. LendingTree*, where this Court found that the same Defendant's 'notice of assent [] in nine-point Arial font with a hyperlink to the Terms of Use' put 'a reasonable consumer creating an account and submitting a loan search' on notice." *Toledo*, 3:25-cv-00949-MEO-DCK (W.D.N.C. July 31, 2026). The Court went on, "the [Court] finds that the arbitration agreement contained in the contract is enforceable." *Id.*

Here, Plaintiff unambiguously agreed to be bound by the Website's Terms of Use and the Arbitration Agreement therein when Plaintiff entered her contact and personal information into QuoteWizard's Website and clicked the "Get My Auto Quotes Only" button. (*See* **Exhibit 1**, Thompson Decl. at ¶ 13; Exs. A–C.) As the screenshot of the Website indicates, when inputting her contact information, Plaintiff was confronted with plainly readable text stating that, "[b]y clicking 'Get My Auto & Home Quotes' or 'Get My Auto Quotes Only', I am also acknowledging that I have read, understand, and agree to this website's Privacy Policy and Terms of Use." (*Id.*, Exs. A–B.) The blue text contrasted with the page's white background and was situated immediately below the "Get My Auto & Home Quotes" and "Get My Auto Quotes Only" buttons. *See id.; Austin,* 148 F. 4th at 208 (finding plaintiff was on notice of the contract where "the words 'Terms of Use Agreement' were set off in blue text on an uncluttered background close to the portions of the form that a customer had to fill out and click"); *Dhruva,* 131 F.4th at 152 (finding there was reasonable notice there was a contract on offer where the Terms of Use hyperlink was printed in

orange on an uncluttered background, close to the payment tabs that the customer had to fill out and the button that the customer had to click and nothing about the website design or layout obscured the conspicuous location of the Terms of Use hyperlink) (citations and internal quotations omitted)); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (finding notice reasonably conspicuous where the text was "uncluttered and wholly visible," "contrast[ed] clearly with the background," and was situated in close proximity to the action button); *cf. Meyer*, 868 F.3d at 78 (finding reasonably conspicuous notice where the screen was "uncluttered"; the notice "text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appear[ed] directly below the buttons for registration"; the "entire screen [was] visible at once"; "and the user d[id] not need to scroll beyond what is immediately visible to find notice of the Terms of Service"); *Hooper v. Jerry Ins. Agency*, LLC, 675 F.Supp.3d 1027, 1035 (N.D. Cal. 2023) (same, relying on *Meyer* and *DoorDash*).

As this Court has noted, courts have routinely found similar sign-in wrap agreements (sometimes termed "modified clickwrap/browsewrap" agreements) to be reasonably conspicuous to users and therefore enforceable. *Granados,* 2023 WL 1481545, at *2; *Toledo*, 3:25-cv-00949-MEO-DCK (W.D.N.C. July 31, 2026); *Melo v. Zumper, Inc.,* 439 F.Supp.3d 683 (E.D. Va. 2020) (finding blue hyper-linked Terms and Conditions placed directly below the "Create Account" button provided sufficient notice of the terms of the contract); *Payne v. Amazon.com, Inc.*, 2018 WL 4489275, at *5 (D.S.C. July 25, 2018) ("a reasonably prudent offeree would know that he agreed to Amazon's Conditions of Use by clicking the 'Place your order' button when that

button appeared directly next to or above a statement hyperlinking to conditions and the statement indicated the user agreed to those conditions by ordering"); *Crawford v. Beachbody, LLC*, No. 14CV1583-GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (upholding "modified or hybrid clickwrap/browsewrap agreement" where plaintiff was required to click a "Place Order" button with a sentence immediately above containing hyperlinked terms, with the words "Terms and Conditions" presented "in blue font[,] while the rest of the language in the sentence was in grey font"); *cf. Rosskamm v. Amazon.com, Inc.*, 637 F.Supp.3d 500, 510–11 (N.D. Ohio 2022) (collecting cases, and finding terms reasonably communicated to [p]laintiffs, and thus enforceable" where the terms were linked directly beneath action buttons "in blue ink indicating a hyperlink," and not obscured).

Plaintiff was presented with a direct, clear, and simple process for accessing the Terms of Use, which establishes that she had reasonable notice of that agreement and its Arbitration Clause. A single click on the conspicuous "Terms of Use" hyperlink directed a user to the full text of the of the agreement, which includes the arbitration clause and class action waiver. It is thus incontrovertible that Plaintiff had ample opportunity to access the contractual terms requiring binding, individual arbitration. Accordingly, Plaintiff was reasonably on notice of their existence and applicability. *See Dhruva,* 131 F.4th at 153 ("courts generally find that when a website provides clear and reasonably conspicuous notice that there are contract terms available by scrolling down or clicking a hyperlink, the user is on reasonable

notice of those terms even if she never reads them." (quotations omitted) (*citing Marshall v. Georgetown Memorial Hospital*, 112 F.4th 211, 220 (4th Cir. 2024)).

Moreover, by entering her name, phone number, and other personal information, and clicking the "Get My Auto Quotes Only" button, Plaintiff unambiguously manifested assent to the Terms of Use: "[T]he click of a button can only be construed as an 'unambiguous manifestation of assent' if 'the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement.'" *Austin*, 148 F.4th 194, 208 (4th Cir. 2025) (*quoting Dhruva*, 131 F.4th. 146, 155).

Here, Plaintiff was notified that she would be agreeing to the Terms of Use "[b]y clicking" either of the two options: "Get My Auto & Home Quotes" or "Get My Auto Quotes Only." (*See* **Exhibit 1**, Thompson Decl. at ¶¶ 7-8; Ex. B at 1.) She then chose to click the Get My Auto Quotes Only button and, as a result, reasonably manifested assent to the Terms of Use and the arbitration agreement contained therein. *See Austin,* 148 F.4th 194 (finding manifested assent to the Terms of Use Agreement, where the notice text, stated "[b]y clicking 'Create Your Account' I accept and agree to your 'Terms of Use Agreement,'" which was in close proximity to the website's 'create your account button); *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 515–17 (9th Cir. 2023) (finding manifestation of assent where notice text stating that "[b]y continuing past this page, you agree to the Terms of Use" appeared "directly above" the "Sign in" button"); *compare id.*, *with Berman*, 30 F.4th at 858 ("[The] notice defect could easily have been remedied by including language

such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" (citation omitted)); *cf. Carey v. Uber Techs., Inc.*, No. 1:16-CV-1058, 2017 WL 1133936, at *4 (N.D. Ohio Mar. 27, 2017) (noting that courts "have found that clicking through relevant screens . . . 'is an acceptable method to manifest assent to the terms of an agreement[ ]' even where disputed terms are contained in a hyperlink," and "'the user has failed to actually review the terms of use prior to manifesting assent'" (internal quotation marks and citation omitted)). Had Plaintiff decided that she did not wish to be bound by the Terms of Use, she could have chosen not to click the Get My Auto Quotes Only button. She did not, so she manifested her assert to the Terms of Use.

## III. If challenges remain, the delegation clause in the arbitration provision requires the Court to allow an arbitrator to decide questions of arbitrability, Plaintiff's defenses, or enforcement.

### A. The delegation clause in the arbitration agreement is enforceable.

The Parties also expressly agreed that arbitrability determinations should be left to the arbitrator, and the Court should enforce that agreement as well. "When an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (*quoting Rent-A-Center, W., Inc. v. Jackson*, 561 US 63,68-69 (2010)); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (noting that, through a delegation clause, parties "can also 'agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes'" (*quoting Henry Schein,*

*Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)). Once the Court finds that the Parties delegated arbitrability determinations to the arbitrator, it has "no power" to override that agreement, "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 63.

Here, the Terms of Use's delegation clause expressly provides that "any dispute regarding the enforceability, applicability, or interpretation of any provision of this Agreement, including the provisions regarding dispute resolution and arbitration, is a Dispute subject to the arbitration provisions herein and shall be resolved by an arbitrator." (*See* **Exhibit 1**, Thompson Decl. at ¶¶ 10-11; Ex. C.) This clause is "'clear and unmistakable' evidence'" that the parties delegated questions of arbitrability to the arbitrator. *Henry Schein*, 586 U.S. at 69 (quotations omitted). Thus, the Court should compel Plaintiff to arbitrate her claims and any defenses she may assert against the enforcement of the Terms of Use or its arbitration provision.

**B. Even if this Court could interpret the scope of the arbitration provision, Plaintiff's claims fall within the broad scope of that provision.**

Even if there were no valid delegation clause, this Court should conclude that all of Plaintiff's claims are covered by the arbitration agreement. "If a contract contains an arbitration clause, 'a presumption of arbitrability exists,' and there must be 'positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts are resolved in favor of coverage." *See Granado*, 2023 WL 1481545, at *2 (*quoting Krueger v. Angelos*, 26

F.4th. 212, 217 (4th Cir. 2022)). "'[T]he presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded, as it is here.'" *Mey v. DIRECTV, LLC*, 971 F.3d 284, 294 (4th Cir. 2020) (*quoting Levin v. Alms and Assocs., Inc*. 634 F. 3d 260, 267 (4th Cir. 2011)).

The arbitration provision's broad language applies to Plaintiff's claim in this case. That provision applies to "any dispute, claim, or controversy . . . arising at any time . . . in any way arising out of or relating to . . . receipt of any advertising or marketing communications." (*See* **Exhibit 1**, Thompson Decl. at ¶¶ 10-11; Ex. C.) As such, it is indisputable that Plaintiff's TCPA claim, based upon her alleged receipt of "unwanted telemarketing text messages" falls squarely within the scope of the arbitration agreement. (*See* Compl. ¶ 16.) Thus, the Court should compel this matter to arbitration because it falls squarely within the scope of the Parties' agreement to arbitrate.

## Conclusion

Accordingly, QuoteWizard respectfully requests that this Court enter an order compelling Plaintiff to arbitrate this action against QuoteWizard pursuant to the arbitration agreement contained in the Terms of Use and stay the instant action pending completion of arbitration.

**Nelson Mullins Riley & Scarborough LLP**

By: */s/ Matthew A. Abee*
Matthew A. Abee, N.C. Bar No. 46949
E-Mail: matt.abee@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, South Carolina 29201
(803) 799-2000

September 21, 2026

*Attorneys for Defendant LendingTree, LLC d/b/a Quote Wizard*

[*Certifications to Follow.*]

**Rule 7.1 Certification**

Undersigned counsel hereby certifies, under L. Civ. R. 7.1(b) (W.D.N.C.), that Defendant LendingTree, LLC d/b/a Quote Wizard has in good faith conferred with counsel for Plaintiff before filing this Motion. Plaintiff opposes the motion.

**Artificial Intelligence Certification**

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting *pro se*) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

**Certificate of Service**

I certify that on the date set forth below, I electronically filed the foregoing with the Clerk of Court and all counsel of record using the CM/ECF system.

By: */s/ Matthew A. Abee*
Matthew A. Abee, N.C. Bar No. 46949

September 21, 2026

*Attorneys for Defendant LendingTree, LLC d/b/a Quote Wizard*